UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MATTHEW J. NEUMANN,

      Plaintiff,

v.                 Case No. 24-cv-818-pp

CITY OF FRANKLIN POLICE DEPARTMENT, *et al.*,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

  Plaintiff Matthew J. Neumann, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 11, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $34.64. Dkt. No. 8. The court received that fee on August 6, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants the City of Franklin Police Department, Detective Shawn Harrison, Sergeant Jeremy Fadness and Chief of Police Rick Oliva. Dkt. No. 1 at 1–2. The plaintiff alleges that on January 8, 2019, Detective Harrison "had [the plaintiff's] commercial vehicle that was equipped with snowplow towed from a business public parking[]lot in New Berlin" while investigating a homicide in East Troy, Wisconsin. Id. at ¶¶1, 3. He alleges his vehicle "was confiscated" the same day. Id. at ¶2. On January 8 to 10, 2019, "Law Enforcement" executed search warrants on "multipl[e] properties owned or leased by" the plaintiff. Id. at ¶5. He alleges that items

were "confiscated and 'destroyed, given away, or lost,'" which deprived him "of his property without due process." Id. at ¶6. He says these items included a knife or sword collection, the truck mentioned above, "Bulk Ammo," miscellaneous hunting or fishing gear and a collection of sixty-nine firearms "that has been in the [plaintiff's] family for generations." Id. at ¶7.

Beginning in 2019, the plaintiff "filed motions to the Milwaukee County Circuit Court" for return of his property. Id. at ¶8. He alleges that in "early 2001 [*sic*] [he] again filed motion to Milwaukee Co. Circuit court" under state law and the Fourth Amendment about "search warrants issued without probable cause." Id. at ¶9. The plaintiff alleges that "the State ADA, City of Franklin, and [the plaintiff] through attorney Cole Ruby agreed to a 'stipulation order--return of property." Id.; Dkt. No. 3 (state court Stipulation and Order). The plaintiff says that "[m]ultiple items were released, items in this movement were said to be held for 'evidence'" as of May 20, 2021. Dkt. No. 1 at ¶9. The plaintiff alleges that on December 11, 2022, he "was informed" that Detective Harrison "gave the Truck and Snowplow to Tammy Kinnee." Id. at ¶11. In January 2023, the plaintiff "learned Shawn Harrison called Tammy Kinnee on his cell phone and offered her [the plaintiff's] enclosed trailer, which she accepted and arranged for pick-up." Id. at ¶12.

The plaintiff alleges that on April 8, 2024, he again petitioned the state court for return of his property. Id. at ¶10. On June 28, 2024, the plaintiff appeared via Zoom "for his property return pet[i]tion dated April 8, 2024." Id. at ¶13. He says that he learned during this conference "from the Franklin City

4

attorney that Franklin 'no longer has the gun collection,' nor the other items listed in his pettioned [*sic*]." Id. (all caps omitted). The plaintiff told the judge that Franklin also no longer had his truck, and he says the City "fa[lse]ly claimed it is being held for evidence." Id. at ¶14. The plaintiff says he "was never contacted at any time regarding the release of his property." Id. at ¶15. He says the truck is titled under his name, and the gun collection "was taken from a locked gun vault at his place of business." Id. He asserts that none of the guns "were ever used in the commission of a crime and his conviction has no nexus to said firearms." Id. at ¶16.

The plaintiff separately alleges that on October 18, 2019, Detective Harrison "falsified police reports claiming [the plaintiff's] daughter . . . witnessed [the plaintiff] with a 'GUN.'" Id. at ¶18. He says that Sergeant Fadness "approved the report after reviewing the audio and Harrison's report." Id. He alleges that Chief Oliva "joins the conspiracy on February 6th, 2022, when he reviews [the plaintiff's] complaint." Id. He claims that Oliva drafted a letter to the Milwaukee County Jail, the district attorney and the plaintiff claiming that the plaintiff's daughter "can clearly be heard stating she witnessed [the plaintiff] with a GUN." Id. The plaintiff says he "was placed in Seg. (THE HOLE)" for filing false complaints. Id. at ¶19. He claims that "[a]udio and transcript provided in [his] discovery proves [his daughter] never says she witnessed her father with a 'GUN.'" Id.

The plaintiff seeks $118,000 for the value of his lost property. Id. at 6. He also seeks $500,000 for violation of his due process rights and $2.5 million for

5

the alleged conspiracy and falsified police reports, which he says violated his rights under the Fourth Amendment. Id.

C. Analysis

The plaintiff seeks to proceed on two claims. First, he claims that the defendants confiscated his property during a homicide investigation without due process of law. But claims for deprivation of property are not actionable under §1983 if adequate state-law remedies are available to redress the deprivation, even if the property is taken intentionally. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Mitchell v. Whiteleather, 248 F.3d 1158, 2000 WL 1742526, at *1 (7th Cir. Nov. 20, 2000) (unpublished). Put differently, "'[u]nauthorized deprivations of property violate the due-process clause only when no post-deprivation procedures are available.'" Washington v. Campbell, Case No. 20-cv-990-pp, 2021 WL 2188358, at *4 (E.D. Wis. May 28, 2021) (quoting Morris v. Scott, 840 F. App'x 14, 15 (7th Cir. Mar. 12, 2021)). The State of Wisconsin "provides several post-deprivation procedures for challenging the taking of property." Cole v. Litscher, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) (citing Wis. Const. art. I, §9; Wis. Stat. §§810 and 893). The plaintiff is aware of those procedures and filed petitions for the return of his property in state court in 2019 and 2024. Because the plaintiff has been provided all the process that was due to address the taking of his property, he does not state a federal claim.

Even if the plaintiff had a viable federal claim regarding his property, this claim is untimely. The relevant statute of limitations for claims brought under

§1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). The limitation period for §1983 claims arising in Wisconsin is the three-year limitations provision found in Wis. Stat. §893.54 (2018). Wisconsin previously allowed a six-year limitation period but in 2018 reduced that limitation period to three years. See Huber, 909 F.3d at 207 (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six to three years). The three-year limitation period applies to causes of action accruing on or after April 5, 2018.

To determine when the plaintiff's claim for the taking of his property accrued, the court "must identify the injury" and then "must determine the date on which the plaintiff could have sued for that injury," which is "the date that the plaintiff knew or should have known that his constitutional rights had been violated." Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006). The complaint shows that the plaintiff knew his property was taken in early 2019 and that he began petitioning the state court for return of his property. Dkt. No. 1 at ¶8. The docket from his 2019 state court criminal case shows that he first filed a "Petition for return of property" on February 12, 2019. See State v. Neumann, Milwaukee County Case Number 2019CF204, available at https://wcca.wicourts.gov/case.html.[1] That means the latest that the plaintiff could bring this federal lawsuit regarding the taking of his property was

---

[1] The state and the plaintiff reached a stipulation on the return of his property on June 2, 2021, but the plaintiff again moved for return of his property on April 22, 2024. The state court denied that petition on June 28, 2024.

February 12, 2022. The court received the plaintiff's complaint about his taken property on July 1, 2024—more than two years after the limitation period elapsed. Even assuming the plaintiff has a federal claim regarding the taking of his property, it is too late to bring that claim under §1983.

The plaintiff's second claim is that the defendants conspired to falsify police reports about testimony from his daughter that the plaintiff had a gun. This claim suffers from the opposite problem as the plaintiff's property claim: it is not yet ripe. "The statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." McDonough v. Smith, 588 U.S. 109, 114 (2019); see Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) (holding that an incarcerated person may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside). The plaintiff claims that the defendants falsified police reports that say his daughter saw him with a gun. The plaintiff insists that other evidence shows his daughter never said he had a gun. He says he filed a complaint about these false reports, and that Chief Oliva confirmed the information in a letter sent to the Milwaukee County Jail and the district attorney. The plaintiff says he was punished with segregation for filing a false complaint about the police reports.

Because success on the plaintiff's claim would undermine the validity of his conviction or sentence, his §1983 claim for damages does not accrue "until

'the conviction or sentence ha[s] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" Savory v. Cannon, 947 F.3d 409, 417 (7th Cir. 2020) (quoting Heck, 512 U.S. at 487). The plaintiff has not alleged that his conviction or sentence have been reversed, expunged, invalidated or called into question.[2] Unless and until the plaintiff can show that his conviction or sentence have been invalidated, he cannot seek damages on his claim regarding the allegedly falsified police reports.

To the extent the plaintiff seeks to challenge the punishment he received for filing a complaint about the false report, he likewise cannot seek damages for that action unless and until he shows that the disciplinary conviction that led to his segregation has been invalidated. See Edwards v. Balisok, 520 U.S. 641, 643–46 (1997)).

The court finds that the plaintiff cannot seek damages on his claim about the taking of his property and that even if he could, that claim is untimely. Nor can the plaintiff seek damages based on the allegedly false police reports until his conviction, sentence and disciplinary conviction have been invalidated. Although district courts generally permit civil plaintiffs at least one opportunity

---

[2] The docket from his state court case shows that the plaintiff was found guilty on December 6, 2019, after a jury trial. He was sentenced on February 20, 2020, to two consecutive terms of fifty years' imprisonment and two concurrent terms of twelve years' imprisonment. The Wisconsin Court of Appeals recently extended to September 3, 2024 his deadline to file a notice of appeal of his conviction.

9

to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding this claim. The court finds that allowing the plaintiff to amend his complaint would not alter its conclusion that his claims are untimely or unavailable under §1983. Because the court is certain that amendment would be futile, it will not allow the plaintiff to amend his complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim, is untimely and is barred under Heck v. Humphrey. The clerk will enter judgment accordingly.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$315.36** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number.

If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of August, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**