UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MATTHEW J. NEUMANN,

                Plaintiff,

v.                                                    Case No. 24-cv-818-pp

CITY OF FRANKLIN POLICE DEPARTMENT, *et al.*,

                Defendants.

**ORDER DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION AND TO AMEND COMPLAINT (DKT. NOS. 14, 17) AND DENYING PLAINTIFF'S MOTION TO PAY REMAINDER OF FILING FEE FROM RELEASE ACCOUNT (DKT. NO. 15)**

On August 21, 2024, the court screened plaintiff Matthew J. Neumann's *pro se* complaint under 42 U.S.C. §1983, determined that it did not state a claim and dismissed it. Dkt. No. 12. The court explained that the plaintiff's claim about his property being taken did not state an actionable claim under §1983 and that even if it did, it was untimely. Id. at 6–8. The court explained that the plaintiff's second claim challenging allegedly false police reports was not yet ripe and could not be brought under §1983 until his conviction or sentence had "'been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" Id. at 8–9 (quoting Savory v. Cannon, 947 F.3d 409, 417 (7th Cir. 2020) (internal quotation omitted)). The court determined that further information would not change its conclusions about the plaintiff's claims, so it did not give him an opportunity to amend his complaint. Id. at 9–10.

1

On August 28, 2024, the court received from the plaintiff a motion for reconsideration and for leave to amend his complaint. Dkt. No. 14. The court received a second, duplicate motion on September 11, 2024. Dkt. No. 17. The plaintiff challenges only the dismissal of his claim about the taking of his property; he does not discuss the court's dismissal of his claim regarding the allegedly false police reports. The plaintiff asserts that the court erred when identifying the accrual date for his claim challenging the taking of his property. Dkt. No. 14 at 1. He first says that he "errored by stating in 2019 he proceeded for property return." Id. He suggests that "many family members" (but not the plaintiff) "petitioned thru [*sic*] counsel for property return resulting from 2019-cf-204." Id. He says he did not learn that his truck was given away until December 11, 2022. Id. at 2. He says that until then, the City of Franklin had been telling him that his property would be "'secure' and stored at the Franklin Police Department." Id. He says he first learned that his trailers "had been given-away [*sic*] or destroyed" in January 2023 and first learned that his firearm and sword collection was "lost, stolen, destroyed, or forfeitured [*sic*] on June 28, 2024 during another property return hearing." Id. at 2–3. The plaintiff asserts that his injury "first occurred on this claim on June 28, 2024," when he learned that his property had been given away or destroyed. Id. He claims that he followed the proper procedures, but that his property still was destroyed, "which violates his rights to 'due Process [*sic*]." Id.

The plaintiff has not stated a legal basis for his motion. But because he filed his motion within twenty-eight days of the judgment, the court construes it as if he had brought it under Federal Rule of Civil Procedure 59(e). The court may grant a motion under Rule 59(e) only if a party can "clearly establish" either newly discovered evidence or a manifest error of law or fact warranting relief.

Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001); Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The plaintiff has not satisfied this standard. First, the plaintiff challenges only the court's finding that his claim regarding the taking of his property was untimely. But that was the court's *secondary* reason for dismissing that claim. The plaintiff has not challenged the court's *primary* reason for dismissing the claim, which is that his allegations about the taking of his property do not state an actionable claim under §1983 because adequate state procedures were available to him. Dkt. No. 12 at 6 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984), and others). The court recounted that the plaintiff was "aware of" the available state law remedies to redress the alleged deprivation of his property "and filed petitions for the return of his property in state court in 2019 and 2024." Id. That those petitions were ultimately unsuccessful, and that his property was lost or destroyed, does not mean that the plaintiff was denied the *process* due to him before he was deprived of his property. See Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (affirming dismissal of Fourteenth Amendment due process claim regarding "deprivation or destruction of personal property" because petitioner "ha[d] an adequate post-deprivation remedy . . . and no more process was due"). Wisconsin law provides additional tort remedies for property that is converted, damaged or destroyed by another. See Foster v. Tanem, Case No. 21-cv-1244-pp, 2022 WL 3647909, at *4 (E.D. Wis. Aug. 24,

2022) (citing Vollmer v. Green Bay City Police Dep't, No. 18-cv-1629, 2018 WL 6067240, at *3 (E.D. Wis. Nov. 20, 2018); Wis. Stat. §§893.35, 893.51 and 893.52). The existence of these provisions, in addition to the available avenue for the return of his property, means the plaintiff does not have an actionable §1983 claim about the taking of his property. See Hudson, 468 U.S. at 533. He has not provided any basis for the court to amend this portion of its judgment on his due process claim.

Second, even if the plaintiff had an actionable due process claim, his challenge to the untimeliness of his claim has no merit. The plaintiff claims he was not made aware that his property was taken until 2022 at the earliest, when he learned that his property had been given away or destroyed, so his claim was not ripe until then. That is an incorrect reading of Savory v. Lyons, which holds that a claim accrues when "'the plaintiff could have sued for th[e] injury.' . . . That is the date that the plaintiff knew or should have known that his constitutional rights had been violated." 469 F.3d at 672 (quoting Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004)). The plaintiff provides no basis for this distinction between property that is taken or seized and property that is lost or destroyed, and the court is not aware of any. See Hudson, 468 U.S. at 544 (Stevens, J., concurring in part and dissenting in part) (noting that a citizen "is just as much deprived of his possessory interests when [his property] is destroyed as when it is merely taken").

The plaintiff's complaint makes clear that he was aware as early as 2019 of his injury—the fact that his property was taken and that he could sue over it. The complaint alleges that "[s]tarting in 2019 [the plaintiff] has filed motions to the Milwaukee County Circuit Court pursuant [to] Wis. Stat. 968.20 for property return." Dkt. No. 1 at ¶8. It does not allege that "family members" filed

these petitions or that family members had property taken. Nor does the plaintiff explain why family members' separate claims of taken property would appear on the docket for his state court criminal case. The statute the plaintiff cites, Wis. Stat. §968.20, provides that "Any person claiming the right to possession of property frozen or seized under s. 971.109 or seized pursuant to a search warrant or seized without a search warrant . . . may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned." Wis. Stat. §968.20(1). This shows that the plaintiff was aware as early as 2019 that his property had been seized from him, and that he was following the appropriate state law procedure for its return. The docket for the plaintiff's state court case, State v. Neumann, Milwaukee County Case Number 2019CF204, available at https://wcca.wicourts.gov/case.html, shows that he filed a "Petition for return of property" on February 12, 2019. The docket shows no other named defendant, petitioner or interested party besides the plaintiff who may have filed this petition.

The docket from that case also shows that the plaintiff filed *three* "pro se petition[s] for return of property"—one on June 25, one on September 24 and one on November 20, 2020. Each of these docket entries specifies that "Matthew Nuemann," incarcerated at Dodge or Waupun Correctional Institution, filed the petition. None of these entries say that a family member of the plaintiff filed these petitions. The plaintiff also claims that his family members sought return of their property "thru counsel," but docket refers to *pro se* petitions (petitions filed without the assistance of counsel). Even if the plaintiff's property had not yet been "given away" or destroyed, he must have known that it was *taken* because he filed these petitions for its return. That he

unquestionably was aware that his property was taken in 2019 and 2020 means that he "'knew or should have known that his constitutional rights had been violated,'" and his claim was ripe. Dkt. No. 12 at 7 (quoting Savory, 469 F.3d at 672).

Even if the court were to use any of these later-filed petitions as the claim accrual date by which the plaintiff knew that his property had been taken—because he was for the *second, third and fourth times* asking the court to order the return of his property—his due process claim regarding the taking of his property would be untimely because he brought his §1983 complaint on July 1, 2024, more than three years after even the latest of these petitions (November 20, 2020). See Dkt. No. 12 at 6–8. The plaintiff's insistence that his claim was not ripe until 2022 at the earliest is incorrect, and the court will deny his motion to reconsider the judgment and allow him to amend his complaint.

Finally, the plaintiff asks the court to allow him to pay the remainder of his $350 filing fee from his release account. Dkt. No. 15. He says that he has been sentenced to seventy-two years' imprisonment, so he likely will not be released during his lifetime and be able to use the funds in his release account. Id. at 1–2. Yet he also says he "has family and friends ready to pick him up once video proves his innocence on direct appeal," or he could use the excess funds in his release account "to purchase a Bus ticket or Uber ride." Id. at 2.

The term "prisoner's account" used in 28 U.S.C. §1915 "encompasses both [the prisoner's] release account and his general account." Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). The release account "is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his

6

Case 2:24-cv-00818-PP   Filed 11/05/24   Page 6 of 8   Document 18

sentence." Wilson v. Anderson, Case No. 14-cv-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code §DOC 309.466). Courts in this district have permitted incarcerated persons to use their release accounts to pay the *initial* partial filing fee. *E.g.* Doty v. Doyle, 182 F. Supp. 2d 750, 751 (E.D. Wis. 2002); Spence, 46 F. Supp. 2d at 862–63. But absent unusual circumstances, this court has no authority to order (or allow) an incarcerated plaintiff to "tap into his release account to pay current (or future) litigation costs." McCalla v. Thompson, Case No. 18-cv-1895-jps, 2019 WL 3220551, at *2 (E.D. Wis. July 17, 2019) (citing Wilson, 2014 WL 3671878, at *3); see also Collins v. State of Wis., No. 20-cv-521-pp, 2020 WL 6361860, at *2 (E.D. Wis. Oct. 29, 2020) ("Although courts often will allow plaintiffs to pay the *initial partial filing fee* with funds from their release account, they generally do not allow plaintiffs to deplete their release accounts by paying the full filing fee from that account.").

There is no statutory authorization for the plaintiff to pay the full filing fee from his release account. As the name suggests, the purpose of that account is to provide funds for his release. That intended purpose is reason not to permit him to use the release account to pay the full filing fee. See Collins, 2020 WL 6361860, at *2 (citing Smith v. Huibregtse, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001)). The court will deny the plaintiff's request to pay the balance of his filing fee from his release account. He must continue to make payments toward that balance with the money in his regular account, as the court explained in the screening order.

The court **DENIES** the plaintiff's motions for reconsideration and to amend his complaint. Dkt. Nos. 14, 17.

The court **DENIES** the plaintiff's motion to pay the remainder of his filing fee from his release account. Dkt. No. 15.

Dated in Milwaukee, Wisconsin this 5th day of November, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**